I respectfully dissent from the majority decision to reverse the Deputy Commissioner's Opinion and Award.
The majority finds as fact that "[p]laintiff was diagnosed with asbestosis and was advised of this condition June 15, 1989." This finding is not supported by the evidence in the Record. Plaintiff stated in his answers to interrogatories that he was told by Dr. David Shanks in June 1989 that he had an occupational disease. According to Dr. Shanks' records, he did not begin seeing plaintiff until 17 September 1990. The closest medical evidence supporting any time of diagnosis regarding plaintiff's condition can be found in a Roentgenographic interpretation of plaintiff's x-rays, done 3 June 1989. In the section marked "Other Comments" is the following notation: "lung and chest wall changes consistent with exposure to asbestos." This is not a diagnosis of asbestosis, but rather is only indicative of the existence of the pleural plaques later corroborated by Dr. Shanks.
In his report dated 17 September 1990, Dr. Shanks stated that "[plaintiff] first knew of an abnormal chest X-ray about 1 and 1/2 years ago when he was told may represent some asbestos involvement." Following his examination of plaintiff, Dr. Shanks concluded that "Mr. Jimmie Clark has had significant occupational exposure to asbestos fiber, and at this time demonstrates on his chest X-ray findings compatible with that of asbestos-related lung disease in that he has pleural plaques and thickening." He also noted plaintiff's chronic cigarette smoking and the existence of chronic obstructive pulmonary disease with emphysema. In his deposition, Dr. Shanks said plaintiff's exposure to asbestos in the workplace would place him at risk for the development of asbestosis, but did not state that plaintiff has the condition.
In addition to Dr. Shanks, plaintiff was also examined by Drs. Clifton D. Young and Andrew J. Ghio. Neither of these physicians diagnosed plaintiff with asbestosis. Dr. Ghio, who examined plaintiff's x-rays taken in 1994, noted the existence of pleural plaques, but stated that he could not determine whether plaintiff had asbestosis. Dr. Young reviewed the reports of Drs. Shanks and Ghio and examined plaintiff himself. He would only say that asbestosis is a possibility, and recognized that while pleural plaques are consistent with asbestosis, they are not diagnostic of the disease. The Full Commission has repeatedly held that pleural plaques do not constitute asbestosis. See Gantv. Duckworth Elec. Co., Inc., (I.C. No. 134182, filed 24 June 1996; Hodges v. E.I. Dupont De Nemours Co., (I.C. No. 221748, filed 17 September 1996); Pridgen v. E.I. Dupont De Nemours Co., (I.C. No. 132426, filed 23 March 1998).
Having presented no evidence that plaintiff has asbestosis, the remaining question is whether plaintiff's pleural plaques constitute an occupational disease under N.C. Gen. Stat. § 97-52, which provides that an employee's disablement or death resulting from an occupational disease "shall be treated as the happening of an injury by accident" as defined by the Act. N.C. Gen. Stat. § 97-53 enumerates the diseases which are deemed occupational diseases within the meaning of the Act. As pleural plaques are not specifically mentioned in the statute, plaintiff must proceed under Subsection (13), which provides grounds for a claim for "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."
The Commission has held in Hodges, that "the formation of pleural plaques does not constitute an occupational disease under N.C. Gen. Stat. § 97-53(13)." However, in Pridgen, the Full Commission awarded benefits pursuant to the statute to the plaintiff who demonstrated the existence of pleural plaques. Whether pleural plaques may or may not constitute an occupational disease has not as yet been addressed by the appellate courts. Assuming arguendo that the condition may be compensable under the statute, the following analysis is required.
First, plaintiff must satisfy the following elements:
 (1) The disease is "characteristic of and peculiar to a particular trade or profession";
 (2) The disease is not an ordinary disease to which the general public is equally exposed; and
 (3) Exposure to a hazard in employment contributed to or was a significant causal factor, in the development of the disease.
 Booker v. Medical Center, 297 N.C. 458, 472-73,256 S.E.2d 189, 198-200 (1979). Assuming without finding that in the instant case plaintiff has met his burden, having established that he has an occupational disease by fulfilling the requirements as set out in Booker, it remains for plaintiff to demonstrate by the greater weight of the evidence that a disability resulted. N.C. Gen. Stat. § 97-2(9) defines "Disability" as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." In order to support a conclusion of disability, evidence must be presented (1) that the claimant was incapable after his injury of earning the same wages as were earned prior to the injury in the same employment; (2) that the claimant was incapable after his injury of earning the same wages as were earned before the injury in any other employment, and (3) that the claimant's incapacity to earn wages was caused by the claimant's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
There is no evidence in the record of this case that plaintiff has suffered a disability. Plaintiff's sole medical complaint is that he has experienced some shortness of breath in the time since he left defendant's employ in 1985. It should be noted that plaintiff is a chronic cigarette smoker, having smoked for twenty years, stopped for eight, then started again. He currently continues to smoke approximately one pack per day. This could easily account for plaintiff's shortness of breath. Further, at the time of the hearing, plaintiff maintained his employment as a pipe fitter and welder. There is no evidence that he has been incapable of earning wages, or that he has sustained any form of disability as defined under the Act. Accordingly, he is not eligible for compensation for an occupational disease.
For these reasons, the undersigned contends that the majority erred in finding as fact that plaintiff has asbestosis, and in concluding that he is eligible for compensation under the Act. Therefore, I would vote to affirm the Opinion and Award of the Deputy Commissioner.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER